The same may be said of relator's demand in this case.

Appeal dismissed.

---

(37 South. 878.)

No. 15,040.

STATE ex rel. POSEY v. BOARD OF ASSESSORS.

(June 6, 1904. On Rehearing, Jan. 4, 1905.)

APPEAL—DISMISSAL—JURISDICTIONAL AMOUNT —MANDAMUS—WHEN GRANTED— MINISTERIAL DUTY.

1. Appeal dismissed on suggestion that the amount in dispute is below the jurisdiction of the court.

On Rehearing.

2. The function of the writ of mandamus is to compel the performance of a plain ministerial duty. It is not the plain ministerial duty of the board of assessors to assess a tract of land as belonging to an individual, and as having a certain measurement and a certain boundary, when the title exhibited by him fails to show that he owns any property answering such description.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the state, on the relation of Lloyd Posey, against the board of assessors. Judgment for defendants, and plaintiff appeals. Affirmed.

Benjamin Rice Forman, for appellant. Frank Bartlett Thomas, Asst. City Atty., for appellee City of New Orleans. Edward King Skinner, for appellees Board of Assessors.

PROVOSTY, J. The matter involved in this suit is whether relator's property should be assessed as one continuous tract of land, or as property laid off into streets and squares. It is suggested by defendant and appellee that this court is without jurisdiction of the appeal, the matter involved not being one of those of which this court has special jurisdiction, and the amount involved being less than $2,000.

There is no allegation of value, and the assessment is not in record. The only data to be found in the record on which the court could base itself for determining value are the acts of sale by which relator and his author acquired. The property was acquired by relator in consideration of $300, and in part payment for certain valuable professional services rendered by relator to his vendors. This was in 1899. Relator's author acquired at auction in 1877 for $4, payable on 12 months' credit.

Relator's counsel in his oral argument referred to an affidavit which he said had been filed in this court showing a value of over

113 LOUISIANA REPORTS.

$2,000, but said affidavit is not to be found in the record, and nothing in the clerk's office shows that it was ever filed. The court must dismiss the appeal; but if in fact the affidavit referred to has been duly filed, an application for a rehearing will be favorably entertained.

Appeal dismissed.

### On Rehearing.
### Statement of the Case.

MONROE, J. The rehearing in this case was granted because the attention of the court was called to a motion and affidavit which has been overlooked, and in which it is made to appear that the amount involved exceeds $2,000.

Relator alleges that he is the owner of a tract of land in New Orleans, which he describes as measuring "nine hundred and eleven feet seven inches and four lines (911' 7" 4''') front on Celestine street, now Johnson street, the same on Florida avenue by 2,735 feet, between parallel lines, on the line which divides it from the Ursulines' Convent on the upper side, and the same measurement, 2,735 feet, more or less, on the line which divides it from the lands of the Society of the Holy Cross; which tract," as he alleges, "extends in a solid unbroken tract from Florida avenue to Johnson street, and between the Ursulines' Convent and the upper side of lands of the Holy Cross." He further alleges that said property has never been divided into squares, and that no streets have ever been dedicated through it, but that the board of assessors, in spite of the returns and protests made by him, persist in assessing it in squares, and he prays that a writ of mandamus issue directing said board "to assess the above-described property for the years 1899, 1900, 1901, 1902, in the name of the relator, Lloyd Posey, and as a continuous tract of land, bounded on the upper side by the Ursulines' Convent lands, on the lower side by the lands of the Society of the Holy Cross, 911' 7" 4''' front on Celestine street (now Johnson street)," the same on "Florida avenue, and 2,735 feet in length between parallel lines, at a sum not exceeding its actual cash value in each of said years."

The board of assessors plead the general issue, and the city of New Orleans, also made party defendant, for answer alleges that relator is without interest, for the reason that the property had been adjudicated to the state for taxes, and, further answering, alleges that said property has for more than 30 years been divided into squares and streets.

By way of proving title, the relator has offered ·in evidence the procés verbal of an adjudication made by the sheriff to F. D. Brinckmann, February 17, 1877, in the matter of Alfred Delavigne against The Beaujou Brick Manufacturing Company, No. 6,430 of the late Sixth District Court for the parish of Orleans, in which the property adjudicated is described as follows:

· "Tract No. 3 measures also 911 feet, 7 inches, and 4 lines front on each of Johnson (projected) street and Florida (projected) avenue, by 1950 feet 11 inches 1 line in depth, between parallel lines, on the lines which divide it from the Ursulines' Convent and the property of the Congregation of the Holy Cross."

"Tract No. 4 also measures 911 feet 7 inches and 4 lines front on each of Florida (projected) avenue and Treasure (projected) street, by 1951 feet 11 inches and 1 line in depth, between parallel lines, on the lines which divide it from the Ursulines' Convent and the property of the Congregation of the Holy Cross."

He has also offered a deed from the widow and heirs of Brinckmann to himself, of date April 17, 1899, in which the property conveyed is described as:

"1st. A certain tract of land * * * designated by the No. 3, having 911 feet 7 inches and 4 lines front on Johnson street; same measurement on Florida Avenue; by 1951 feet, 11 inches and 1 line deep, between parallel lines, on the line which divides it * * *, said tract extending from Florida Avenue to Johnson Street."

"2nd. Another tract of land * * * designated by the No. 4, measuring 911 feet, 7 inches and 4 lines front on each Florida Avenue

and Treasure Street by 1951 feet 11 inches and 1 line in depth, between parallel lines, on the side which divides it * * *, said tract extending from Florida Avenue to Treasure Street."

Relator has further offered a map purporting to have been made by "W. H. Springbett, and L. H. Pilie, deputy surveyor," dated 1839, upon which the two tracts above described appear as a single body of land undivided by streets, and concerning which Mr. Edgar Pilie, civil engineer and surveyor, sworn as a witness for relator, testifies that he had seen and consulted it frequently, and that it was recognized as authentic; that it was made about 1835 or 1836; that since that date he has known but two official maps of the city to have been made, one by Hardee and one by Bell, the latter in 1870 or 1872. The witness further testifies that he knows the land in question, and knows that it was divided into squares and streets; that his father, L. H. Pilie, was employed in 1868 to make a survey of it, and subdivide it into squares and lots; and that he has seen, and has made for auction purposes, maps of portions of said property, showing such subdivisions. He further testifies that Johnson street, as it existed in 1877, has been otherwise called "Liberal," and is now Miro street, and is two blocks farther back, in the direction of Florida avenue or walk, than Celestine street, which latter is now called "Johnson street." The witness also identified a map on which the property hereinbefore designated as "Tract No. 3" is shown as subdivided into squares and streets, as a correct copy of part of the map compiled by Braun & Fitzner, approved by Bell, and certified to by Hardee, now city engineer, it appearing on the face of said map that the "Mr. Bell" referred to approved it in the capacity of city surveyor.

Relator himself testifies that he has been in possession of the property purchased by him from the Brinckmanns since the date

113 LA.—30

of his purchase; that it has never been subdivided into squares and streets; and that the whole property, "from the beginning, toward the river, up to Florida walk," has been inclosed by him within one fence. He admits that at one time he offered it for sale as subdivided into squares, and with streets bearing the same names as those on the Braun & Fitzner map, all according to a plan which he caused to be made, but he states that the offer was made merely to ascertain the value of the property, and with no idea of selling it.

## Opinion.

It will be seen that the property described in the petition, and which the relator asks that the board of assessors be directed to assess as a single tract according to the dimensions given in the petition, is said to measure 911 feet 7 inches and 4 lines on Celestine street and the same on Florida avenue, by 2,735 feet in depth, between parallel lines, whereas the title by which he acquired shows that he owns two tracts, the one measuring 911' 7" 4''' on Celestine street and the same on Florida avenue, by a depth of 1,951' 11" 1''' between parallel lines, and the other measuring 911' 7" 4''' on Florida avenue and Treasure streets, respectively, by 1951' 11" 1''' in depth between parallel lines. Beyond this, his own witness, Pilie, testifies that Celestine street, which relator proposes to have the assessors establish as one of the boundaries of the property described in the petition, is not the "Johnson Street" called for by his title as the boundary.

The function of the writ of mandamus is to compel the performance of a plain ministerial duty. It is not the plain ministerial duty of the respondent board, apart from any question of the subdivision of the property, to assess, as belonging to relator, a tract of land measuring 2,735 feet in depth between parallel lines, and bounded on one side by Celestine street, when he exhibits no title

to any tract having such dimensions or boundary.

The judgment appealed from is therefore affirmed at the cost of relator.